## MARSH vs. MITCHELL.

1. No estate of a *feme covert* passes by her deed, without the statutory acknowledgment. That acknowledgment must be made, in all cases, whether the conveyance is of her own separate estate, or of the lands of her husband.

2. The certificate of the officer taking the acknowledgment, simply makes a *prima facie* case that the requirements of the statute were complied with; the truth of the certificate may be disproved.

3. To avoid a deed of a married woman for want of acknowledgment of the statutory facts, the defence must be set up in the answer.

4. Express admissions *in judicio*, stand as conclusive presumptions of law, and cannot be disputed, unless it is first shown they were made by mistake.

5. An amendment to a sworn answer by the addition of material facts, known to the defendant at the time the original answer was sworn to, will not be permitted on final hearing.

6. A defendant attempting to nullify his own mortgage, having the support of a just debt for its consideration, recorded the day after its execution, on which the interest has been regularly paid, semi-annually, for two years, on the ground he was induced to execute it by a promise that it should not be recorded, nor have effect as a mortgage, and he would never be required to pay it, must produce sufficient proof to put the mind of the court at rest on his right to have the deed nullified.

7. A mortgagor cannot defend against his own mortgage, on the ground that it was obtained under fraudulent promises of his agent, unless he shows collusion between the agent and the mortgagee.

On final hearing, on bill, answer, and proofs.

*Mr. J. S. Applegate*, for complainant.

*Mr. A. C. McLean* and *Mr. C. Parker*, for defendant.

THE VICE-CHANCELLOR.

The object of the bill in this case, is to enforce the payment of a mortgage debt, by the sale of certain mortgaged premises. The mortgage was made by the defendant, Isabella H. Mitchell, and her husband, Charles H. Mitchell, to Seth D. Mills, October 25th, 1871, to secure the payment of $9113, with interest, one year after its date, and was assigned by Mills to the complainant, June 13th, 1873. All interest accrued up to October 25th, 1873, had been paid, before the commencement of the suit, in semi-annual payments. Charles H. Mitchell died January 30th, 1873. The bill was filed March 11th, 1874. The land mortgaged was the separate property of the defendant, and the consideration of the mortgage was a debt of her husband. Its validity against him has not been questioned.

On the argument, the complainant's right to a decree was resisted on the grounds : first, that the paper sought to be enforced as a mortgage, was not, as against the defendant, a valid deed, because she did not acknowledge the statutory

facts, necessary to pass her estate, on a private examination, apart from her husband, but in his presence and under his eye; second, that she was induced to execute it by the fraudulent representations of one Seman Klous, as to its object and the use to be made of it.

The statutory requirement that the acknowledgment of a married woman shall be on a private examination, apart from her husband, is clear and imperative. No estate of a *feme covert* shall pass without it. *Revision* 88. It applies to all conveyances by a married woman, whether of her own separate estate or the lands of her husband. *Ross* v. *Armstrong*, 5 *C. E. Green* 109. The certificate of acknowledgment, in this case, is in due form, certifying that the defendant was privately examined, separate and apart from her husband, by the officer, and that on such examination, she acknowledged all the facts required by the statute. This, however, simply makes a *prima facie* case; the truth of the certificate may be disproved. *Wells* v. *Wright*, 7 *Halst.* 137.

Whatever force there might have been in that defence, under other circumstances, it is clear, in the present condition of the pleadings, the defendant cannot be permitted to make it. It is not set up in the answer. It is not even hinted at. By the answer, the defence is limited to fraudulent representations in procuring the mortgage; no question is made that the formal acts necessary to give it validity as the deed of a married woman, were performed; indeed, the complainant is not put to the proof of the mortgage. She admits its execution, but avers it is invalid because procured by fraud. In this condition of affairs, it is obvious the defence now set up is not within the issue made by the pleadings. The defendant cannot, therefore, have the benefit of it. *Parsons* v. *Heston*, 3 *Stockt.* 155; *Howell* v. *Sebring*, 1 *McCarter* 90; *Champion* v. *Kille*, *Ib.* 232; *Gresley's Eq. Ev.* 234, *marg'l.* "A decree entirely outside of the issue raised in the record, is *coram non judice*, and will be so adjudged, even when assailed in a collateral proceeding." *Munday* v. *Vail*, 5 *Vroom* 418.

The power of permitting amendments is frequently exer-
cised by courts of equity, even on final hearing, when neces-
sary to the furtherance of justice.   Should the defendant be
permitted to file an amended or supplemental answer to set
up this defence ?   The answer is under oath.   No claim is
made that there was actual coercion, or that the mortgage
was not her voluntary act.   If it is true her husband put
her name to the notes without her knowledge or authority,
she had strong motive for desiring to have them in her own
possession and out of the hands of a determined creditor.
Even before the production of evidence, the court listens to
applications to amend sworn answers, with great caution, and
will not, as a general rule, permit material facts, prejudicial
to the complainant, to be added, if they were known to the
defendant at the time the original answer was sworn to.
*Vandervere* v. *Reading*, 1 *Stockt.* 446 ;  *note to Livesey* v.
*Wilson*, 1 *Vesey & Beames* 149 ;  *Bowen* v. *Cross*, 4 *Johns.
Ch.* 375 ;  *Champion* v. *Kille, supra ;* 1 *Daniell's Ch. Pr.* 778,
780.   Chancellor Green, in denying an application to amend,
in *Huffman* v. *Hummer*, 2 *C. E. Green* 272, employs lan-
guage strongly pertinent to the case in hand.   He says : " It
is clear that no new fact has come to the knowledge of the
defendant since the answer was sworn to.   Every fact now
within the knowledge of the defendant, was known to him at
the time of putting in the answer, and it would tend to the
encouragement of gross negligence, to permit a defendant to
remould an answer, to the truth of which he had sworn, with
full knowledge of all the facts."   It is perfectly plain an
amendment cannot be permitted in this case without violating
an established rule of practice.

It must also be remarked, the defendant is precluded from
disputing the due execution of the mortgage, by admissions
made in her behalf and forming part of the record in this
case.   Her solicitor admitted, before the master, during the
production of the proofs, that the mortgage was signed and
executed by the defendant and her husband.   The admission
was recorded by the master, with the assent of the solicitor,

and the mortgage offered and received in evidence without objection. Express admissions *in judicio*, stand as conclusive presumptions of law, (1 *Greenleaf's Ev.*, § 27,) and cannot be disputed unless it is first shown they were made by mistake. *Ibid*, § 206. No such claim is made, and, under the circumstances, it may be fairly presumed it would be difficult to maintain it, if made.

Upon the record as it now stands, I hold the due execution of the mortgage has been admitted and cannot, therefore, be contested.

The papers, by their inherent force and the defendant's admission, establish a complete case against her, and put on her the burden of showing they are vitiated by fraud.

The mortgage was given to take up two notes, purporting to be made by the defendant and her husband to Seman Klous, the first dated April 19th, 1870, for $5000, payable eighteen months after date, and the second, dated October 12th, 1870, for $4500, payable one year after date, each bearing interest from its date. The defendant says she did not sign them, either in person or by an agent, but that her husband admitted he had put her name to them. If the signatures are imitations, they are skillful. Klous transferred the notes to Seth D. Mills before maturity, who, some days before they fell due, informed the defendant he held them, and payment at maturity would be required. The defendant never disputed the genuineness of her signatures, nor her liability, until the commencement of this suit; on the surrender of the notes to her, after the execution of the mortgage, she admitted they bore her name.

The theory of the defence seems to be this: That the transfer of the notes by Klous to Mills was a mere fraudulent devise to prevent the allowance, by way of set-off, of an alleged claim for professional services rendered to Klous, held by the defendant's husband, who was a member of the New York bar; that Klous continued to be the actual owner of the notes while they were in the hands of Mills, and is the real actor in this suit; and having induced the defendant

to execute the mortgage, by representing that he merely desired to show it to Mills to induce him to take other notes in the place of those bearing her signature, that it should not be recorded, nor she required to pay it, he ought not now, to her injury and his gain, be permitted to enforce its payment in violation of his promise.

There is no proof Klous owed the husband a penny when the mortgage was given ; the proof offered by the defendant renders it almost absolutely certain he did not. She put in evidence a letter written by Klous to her husband, dated August 5th, 1871, in which Klous acknowledges the receipt of his bill and that of Mr. Amzi C. McLean, for professional services up to that date, amounting together to $3000, and then states, he sends him, in payment of these claims, Mr. Mitchell's own note, on which there was then due, for principal and interest, $1832.50, and that $1167.50, the balance of the $3000, had been credited " on the joint note of yourself and Mrs. Mitchell, dated April 19th, 1870, for $5000." No attempt has been made to show Mr. Mitchell had any other claim than that Klous paid by the surrender of his note and the credit. It is clear, then, if any false representations were made, their object was not to cut off a set-off.

The evidence falls far short of convincing me the defendant was induced to execute the mortgage by the representations and promises imputed to Klous. He denies them, positively. A defendant attempting to nullify his own mortgage, having the support of a just debt for its consideration, recorded the day after its execution, on which the interest has been regularly paid, semi-annually, for two years, on the ground he was induced to execute it by a promise that it should not be recorded, nor have effect as a mortgage, and he would never be required to pay it, should be required to produce sufficient proof to put the mind of the court at rest on his right to have the deed nullified; otherwise it should stand. The evidence of the defendant is fully disproved by the denials of Klous. There is no evidence that will justify even a violent suspicion Mills was not the owner of the notes when the mortgage was

Marsh v. Mitchell.

given. Klous swears he sold them to him; the defendant admits Mills notified her he owned them, and demanded payment, and that Klous told her, Mills would not surrender them without other security. There is no proof that Klous was the agent of Mills, or that he had any authority to act or speak for him. The notes, after maturity, were in the hands of a person by the name of Van Dyke, who swears Mills put them in his hands for collection; that he applied to the husband for payment, received an offer of a mortgage on real estate at White Plains, New York, declined it because the land was already encumbered by a mortgage for $20,000, but offered to accept a mortgage on the New Jersey property, and after some discussion, came to an understanding with the husband, that a mortgage on these lands should be given for the notes. Klous swears he applied to Mills to accept a mortgage on the property at White Plains, at the defendant's request, but Mills refused, and that he attended at the place where the mortgage was executed at her request. In view of these facts, it is manifest, Klous had no right to speak for Mills, nor can anything he said impair Mills' rights. The defendant cannot urge against Mills the fraudulent promises of her own agent or adviser, unless she shows collusion. Nothing of that kind is proved.

I think the defendant's right to be heard in denial of the validity of the mortgage, may be very seriously disputed. It appears the complainant was solicited to purchase it by Mr. Amzi C. McLean, who represented it to be an "undoubted security." This representation was made June 3d, 1873, and it was assigned to the complainant June 13th, 1873. If this representation was made by the authority of the defendant, and the complainant acted, relying upon its truth, the defendant cannot now impugn its truth. Mr. McLean is her brother-in-law, and also her solicitor in this cause; after the death of her husband, he was her adviser, taking general charge of all her business affairs; he conducted all the negotiations respecting the payment of interest, and to procure delay in the commencement of this suit. It is

quite obvious he had charge of her business with her full assent, and, possibly, managed it without much consultation with her. While it may be true she never expressly authorized him to solicit the complainant to purchase this mortgage, there can be no doubt she knew he was endeavoring to get some one to take an assignment of it, and hold it until a sale of some of her property could be made to pay it. I have no doubt his conduct in this respect had her full approval.

In view of the whole case, I am satisfied the complainant is entitled to a decree, and will so advise.