RALPH W. POTTER et al., complainants,

*v.*

ERNEST J. STEER et al., defendants.

[Decided November 16th, 1923.]

1. A statutory acknowledgment, duly certified, is an essential part of a married woman's deed to convey her lands.

2. A certificate of acknowledgment attached to a deed is only *prima facie* evidence of its contents, but to establish its untruth and overcome the strong presumption of its integrity the proof must be clear, satisfying and convincing.

3. Where an officer has certified the acknowledgment to a deed, and the instrument has passed from his custody, his powers are exhausted, and, in the absence of statutory authority, he cannot thereafter correct the certificate or make a new one without a re-acknowledgment by the grantor.

4. Where a certificate of acknowledgment of a married woman was faulty, and another notary made a second one in proper form, but the grantor denied appearing before the notary, and acknowledging the deed, evidence examined and *held* that the second certificate of acknowledgment was false.

On final hearing.

*Messrs. Lum, Tamblyn & Collier (Mr. Ralph Lum)*, for the complainants.

*Messrs. Osborne, Cornish & Scheck* and *Mr. Edwin G. Adams,* for the defendant, Mrs. Steer.

BACKES, V. C.

This is a bill to foreclose a deed of mortgage given by a married woman, on her separate estate, to secure her husband's obligation. The defense is that the instrument was not acknowledged by her as required by the statute, and that the certificate of acknowledgment, in due form, attached to the document and executed by a New York notary, is untrue. It is settled law that a statutory acknowledgment, duly certified, is an essential part of a married woman's deed to convey her lands. *Brady* v. *McHugh, 94 N. J. Eq. 336.* Section 39 of the act concerning conveyances as amended (*P. L. 1918 p. 119*) provides that:

"No estate or interest of a *feme covert* in any lands, tenements or hereditaments, lying and being in this state, shall hereafter pass by her deed or conveyance without a previous acknowledgment made by her before one of the officers mentioned in the twenty-second, twenty-third and twenty-fourth sections of this act, as the case may be, that she signed, sealed and delivered the same as her voluntary act and deed, such officer being satisfied that she is the person named in such deed or conveyance and 'having first made known to her the contents thereof, and a certificate thereof written on, or under, or annexed to the said deed or conveyance, and signed by the officer before whom it was made," &c.

It is also well settled that the certificate of acknowledgment is only *prima facie* evidence of its contents, and that it may be shown to be untrue. *Wright* v. *Wells, 12 N. J. Law 131;*

*Marsh* v. *Mitchell, 26 N. J. Eq. 497; Whalen* v. *Manchester·Land Co., 65 N. J. Law 206; Brady* v. *McHugh, supra.* But to establish its untruth and overcome the strong presumption of its integrity the proof must be clear, satisfactory and convincing. The question is, has the defendant sustained the burden thus put upon her? Mrs. Steer's husband, Ernest J. Steer, for many years and up until about the time the deed was given was a highly paid official of the Barrett Company of New York. As a side line he dabbled in the stock market. He played with his own money and also with that of a few associates and friends who had confidence in his judgment, was imprudent and mingled their funds with his own, and lost all. He compromised with them all except Cooney. He had nothing left for him. Criminal proceedings for embezzlement, although not exactly threatened, were in the air. To appease Cooney, Steer hurriedly had his New York lawyer draw the deed conveying his wife's property in Montclair— her home—to Potter, the complainant, in trust, to secure Cooney from any damage he would sustain if Steer did not deliver to him certain stocks (stocks that Steer had bought for Cooney) within a given period. Steer that evening explained, in a way, to his wife the meaning of the deed, that it was only a makeshift or a temporary security to tide him over with Cooney and that it would come to nothing. He was hopeful, and I think believed, that his account with his brokers would show enough in his favor to pay off Cooney. In this he was later disappointed. Mrs. Steer was apprehensive of losing her home and demurred and protested, but finally gave in and executed and acknowledged the deed that same night before one Treacy, a notary public in Newark, and Steer mailed it at once to Potter, at Erie, Pa. Treacy's certificate of acknowledgment, drawn by the New York lawyer, was not in statutory form and Potter's counsel in Erie forwarded the deed with a correct certificate attached to their New York correspondent, Mr. Link, a lawyer, for re-execution. The deed and the Treacy certificate bear date September 30th, 1921. The second certificate is dated October 13th, 1921, is subscribed by one Keelen, a New York notary, and

purports to have been executed in New York. Mrs. Steer testified that she did not appear before Keelen on October 13th, or any other time, and acknowledge the instrument. Mr. Steer says she was not there, and Keelen, the notary, says he has no independent recollection of the occurrence. Keelen's explanation is that if Mrs. Steer did not in fact appear before him the deed must have been surreptitiously inserted among his other papers of like character by Steer, and that he signed it in the ordinary routine. I hardly think it happened that way, because the venue to the certificate as originally written was "State of New Jersey, Essex County," over which Keelen, by rubber stamp, put "State of New York, County of New York," and attached to his signature, by rubber stamp, his official title and impressed his official seal. This preciseness of conduct, it seems to me, indicates circumspection and care and not imposition. Steer says it happened in this way: Link asked him on the day of the date of the certificate, October 13th, 1921, to have the deed properly acknowledged, and upon stating that his wife was not in town and that he could not go out to Montclair and get her, Link said: "Well, you can get that fixed up. Mr. Keelen will fix it up for you," and that his recollection is that Link gave him only the sheet containing the new certificate; that he took it to Keelen, who was in the same building, a few floors removed; asked him to fix it up; that Keelen attested it and that he returned it to Link within twenty minutes. Link testified that he received the document with the blank form of acknowledgment attached from the Erie lawyers October 5th; that he immediately gave it to Steer to have it executed and that it was returned to him October 15th, and that he did not tell Steer to go to Keelen and have it fixed up. I will not attempt to reconcile the conflict in the testimony of these two witnesses; but considering Mrs. Steer's revolt before the first execution in the Newark notary's office, and her reaction, and that Steer undoubtedly shrunk from the ordeal of a second effort, for, according to Link, Steer came to him some time after he had the deed and wanted to know if his, Steer's, secretary could not witness it, and being told that she could

if Mrs. Steer acknowledged it before her, he said he didn't want to do it that way, it becomes more than a probability that he did not again approach his wife, but took one of the two shorter cuts already related. As to Mrs. Steer, I doubt if she could have been persuaded a second time. Now, in whatever manner the certificate was procured; whether Keelen signed it to accommodate Steer, or whether he was imposed upon by Steer smuggling it among his papers, the outstanding fact is that Mrs. Steer did not appear before him and acknowledge the deed. Her testimony on this point stands unimpeached. She appears to be a woman of refinement and high character, and the frank and candid manner in which she testified impressed me that she was telling the truth. She was not seriously cross-examined on this vital point, and, I think, because counsel was also impressed with her honesty. Then there are circumstances that lend support to her denial. Keelen has been for many years a clerk in the Barrett company. His duties seem to have been the taking of affidavits and acknowledgments for the company, its officers and employes. The Barrett company was for many years at 17 Battery place, New York. On August 1st, 1921, they moved to 40 Rector street, where they occupied a number of floors. Steer was relieved of his position with the company September 1st, 1921, probably due to his misfortune in Wall street. He took an office at 179 Broadway, although for a month or so he continued to go to 40 Rector street to attend to odds and ends. His office and Keelen's were not on the same floor. Mrs. Steer said she was never in that building, and as to this I think she could not be honestly mistaken, and she says further that she had not seen Mr. Keelen in five years. Keelen said that he took acknowledgments of deeds for Mrs. Steer when the company was at Battery place, but he had no recollection of having seen her at 40 Rector street. Mr. Adams, Mrs. Steer's attorney, who made investigation preliminary to the filing of the answer in this suit, says that Keelen told him he did not see Mrs. Steer after September 1st, 1921. Keelen admits saying so with the qualification that he did not recollect seeing her.

It was suggested, but not pressed, that Keelen might have taken Mrs. Steer's acknowledgment in New York elsewhere than at 40 Rector street; but it seems to me that such an unusual occurrence would have been readily recalled by the notary. Furthermore, Keelen used his office paraphernalia of rubber stamps and official seal on the certificate and it is not at all likely that he carried them about on his person.

The testimony satisfies me that the certificate is untrue. Whether it was procured by the fraud of Steer or voluntarily made by Keelen to accommodate Steer, the deed is a fraud upon Mrs. Steer and a fraud upon the record.

In three of the four cases in this state brought to my attention, in which the certificates were attacked because untrue, the proofs were inconclusive and therefore insufficient to overcome the presumption created by the certificate. *Tooker* v. *Sloan, 30 N. J. Eq. 394; Black* v. *Purnell, 50 N. J. Eq. 365; Gould* v. *Hurley, 75 N. J. Eq. 512.* In *Brady* v. *McHugh, supra,* Vice-Chancellor Fielder found the certificate to be untrue and invalidated the mortgage.

At the trial Treacy, the Newark notary, subscribed to a new certificate, drawn conformable to the statute, and annexed to the deed. This is not curative. Delivery of a deed is essential to the passing of title to land, and the statute relating to acknowledgments of deeds by married women requires a previous acknowledgment and that the certificate accompany delivery. Furthermore, the notary was without authority at the time to make the certificate. In *1 Corp. Jur. 871,* it is said that "according to the weight of authority, where the officer has certified the acknowledgment, and the instrument has passed from his custody, his powers are exhausted and, in the absence of statutory authority, he cannot thereafter correct the certificate or make a new one without a reacknowledgment by the grantor." The text is supported by the authorities cited. In *Bours* v. *Zachariah, 11 Cal. 281,* one of the cases cited, the subject is learnedly discussed by Justice Baldwin of the California supreme court, in which Justice Field, afterwards of the United States supreme court, concurred. The conclusions are concisely set

forth in the headlines thus: "A notary derives his power to take and certify acknowledgments to deeds from the statute. He acts as under a special commission for that particular case—clothed with limited statutory power. He is to take the acknowledgment and certify it as part of the same transaction. After taking the acknowledgment and delivering the return his functions cease and he is discharged from all other authority and cannot alter or amend his certificate."

The bill will be dismissed as to Mrs. Steer. There may be a decree as against Mr. Steer and his inchoate right of curtesy. *Armstrong* v. *Ross, 20 N. J. Eq. 109, 120; Hackensack Trust Co.* v. *Tracy, 86 N. J. Eq. 301.* This execution will be withheld until the curtesy becomes consummate. This meager relief may be rendered altogether nugatory. *Bucci* v. *Popovich, 93 N. J. Eq. 121; affirmed 511.*