An introductory narrative of the acknowledged and the controverted facts is essential to display the reasons that have fashioned my ultimate conclusions in this cause.
On May 28th, 1941, the defendants Henry Yetter and Arthur M. Yetter together with Dora J.O. Yetter let and demised to one Edwin Ruth a spacious building known as No. 1900 Genesee Street, Hamilton Township, Mercer County, in which a roller skating rink has until recently been conducted. On April 26th, 1943, the business and an assignment of the lease were acquired by Nicholas and Anna Mekosh who on August 16th, 1945, transferred the enterprise and their leasehold estate to the complainant. Under the provisions of an agreement dated August 25th, 1945, the tenancy was made available to the lessee at his option and subject to a stated contingency until June 30th, 1951.
Late in 1946 the complainant resolved to advertise the business for sale. The advertisement engaged the attention of the defendant Howard Erb, Jr., who, as a real estate broker, had received inquiries concerning buildings adaptable and available for use as warehouses. Erb did not have any prospective purchaser for the skating rink business. His quest was to discover a warehouse. He promptly interviewed the complainant to ascertain the duration and terms of the latter's tenancy and the opportunity to negotiate a transfer of the possession of the premises. The complainant informed him that his tenancy under his lease did not expire until June 30th, 1951, and that he would assign his lease for the sum of $7,500, reduced by parley to the bargaining price of $6,750. It is conceded that Erb did not then divulge to the complainant the identity of the party in whose interest he was inquiring. *Page 424 
It was during the preliminary discussions that the complainant entrusted Erb with a copy of the lease for inspection. In truth, Erb was endeavoring as an independent agent to acquire a storehouse for the defendant Royal Liquor Distributors, Inc., and thereby to earn a brokerage commission. For convenience I shall hereinafter allude to the corporate defendant as the "company."
The representative of the company instructed Erb to submit the lease to its attorney for examination. The attorney did not recommend the expenditure of such a sum for the acquisition of the tenant's qualified and uncertain leasehold estate in the property because of his observation of the following terms and provisions embodied in the lease:
"II. It is further agreed that if the Lessee shall exercise the option to renew said lease the Lessors, in case of a bona fide
offer for the purchase of said premises acceptable to said Lessors, shall have the right to terminate the lease at any time during the term created by the renewal thereof, by giving the Lessee sixty (60) days' notice to vacate said premises, and said Lessee agrees, upon receipt of said notice, to vacate and deliver possession of said premises to said Lessors, or their heirs and assigns, provided, however, that said Lessors shall notify said Lessee in writing of said bona fide offer and of their intention to accept the same, and said Lessee shall, in such event, be allowed fifteen (15) days thereafter to purchase said premises at a price and upon terms as favorable as those so offered and acceptable to said Lessors. If, however, any party, other than the lessee, shall purchase the demised premises, then the Lessors shall pay to the Lessee, as consideration for the surrender thereof, a sum of money equal, at the time of such purchase, to the unamortized cost of the permanent improvements and trade fixtures as originally made and installed by the Lessee at the beginning of the original term of this lease. The amortization of such cost shall be upon the basis of a ten year period and the original sum to be amortized over such period shall in no case exceed forty-five hundred dollars ($4500). Upon such payment by the Lessors, the trade fixtures, as well as the permanent improvements, will become the property of the Lessors, nothing in this lease to the contrary withstanding."
Moreover the attorney emphasized the fact that the agreement of August 25th, 1945, relative to the extension of the period of the lease and the complainant's privilege to renew was executed by only one of the lessors.
In consequence of the advice of its attorney the company declined to purchase the lease. Mr. Erb and a representative *Page 425 
of the company visited the complainant and informed him of the unsatisfactory features of the lease. The complainant understood that Erb was acting in the capacity of a broker and then became aware of the particular party desirous of obtaining a building for storage purposes. It seems evident that the complainant had become reluctant to continue the operation of the skating rink. A general discussion ensued in which the complainant mentioned that to establish the rink 12,000 square feet of maple flooring had been installed in the building, which perhaps the company would not necessarily require for the purposes of its occupancy.
It is said that from that disclosure the proposal evolved that if the lessors could be induced to release the complainant from all obligations, present or future, under the lease and permit the complainant to remove and have all of the flooring, he would surrender his tenancy to the end that the company might obtain a satisfactory lease for itself from the lessors.
The uncontroverted and potential fact is that on January 29th, 1947, the defendants Henry Yetter, Arthur M. Yetter, and Albert L. Yetter, as parties of the first part, and the complainant of the second part executed and duly acknowledged an agreement in writing of the following import:
"WITNESSETH:
"WHEREAS, the parties hereto entered into a certain agreement, or indenture of lease, dated 28th day of May, 1941, and recorded in the office of the Clerk of the County of Mercer in Book 853 of Leases, Page 298, which lease was assigned by mesne assignments to the said party of the Second Part, wherein and whereby the Party of the First Part, as Landlord, leased unto the Party of the Second Part, as Tenant, for a term of (2) two years from the 1st day of July 1941, and subsequently extended to the 30th day of June 1951, premises known as 1900 Genesee Street, in the Township of Hamilton, County of Mercer and State of New Jersey;
"WHEREAS, the parties hereto desire to cancel and terminate said lease, and to end the term thereby demised as of the 1st day of March 1947, and to release each other from their respective obligations to keep, observe and perform the several covenants, conditions and agreements in said lease set forth on their respective parts to be kept, observed and performed:
"NOW, THEREFORE, The parties hereto do hereby mutually covenant and agree as follows: *Page 426 
"1. That the said lease be, and the same hereby is, cancelled and terminated, and the term thereby demised hereby is brought to an end as of this 1st day of March, 1947.
"2. That the Party of the First Part and the Party of the Second Part be, and they hereby are, respectively released and discharged from their respective obligations to keep, observe and perform the several covenants, conditions and agreements in said lease set forth on their respective parts to be kept, observed and performed.
"3. That the Party of the Second Part hereby agrees to and with the Party of the First Part to vacate the premises that are covered by the said lease, on or before the 1st day of March 1947; and the Party of the Second Part further agrees that, should the said premises not be vacated at that time, then the Party of the First Party hereto may remove the Party of the Second Part, by force or otherwise, without legal process, and without being liable to prosecution therefor.
"4. That the said party of the Second Part shall have the privilege of removing the loud speaking system, the electric fixtures placed in said premises by said Party of the Second Part; and the skating flooring installed by the Party of the Second Part in said premises, provided that the removal of the above items will not damage the freehold.
"5. That this agreement shall be binding upon, and enure to the benefit of, the parties hereto, and their respective successors and assigns."
A certificate of acknowledgment made by a duly authorized officer is regarded as prima facie evidence that the person therein named executed the instrument to which it is attached as his voluntary act and deed. Walkowitz v. Walkowitz, 95 N.J. Eq. 249; 122 Atl. Rep. 835. The statements contained in the acknowledgment may be shown to be untrue. Marsh v. Mitchell,26 N.J. Eq. 497; affirmed, 27 N.J. Eq. 631. But to establish its falsity and overcome the strong presumption of its integrity the proof must be clear, satisfactory, and convincing. Potter
v. Steer, 95 N.J. Eq. 102; 122 Atl. Rep. 685.
Under date of February 6th, 1947, the owners of the premises let and demised the property to the defendant company conditioned upon the latter's ability to secure a wholesale plenary license at that location. The license was granted in April, 1947. The complainant thereupon proceeded to remove the fixtures and flooring specified in his agreement of January 29th, 1947, and surrendered possession of the premises to the company. *Page 427 
The foregoing narrative of events I believe to be a summary of the acknowledged and adequately established facts.
In March, 1947, after the execution of the instrument evidencing his relinquishment of his tenancy and his discharge from further contractual obligations imposed upon him by his lease in consideration of the opportunity to remove the fixtures and flooring, the complainant inquired of Erb when he might expect to receive the sum of $6,750 in compensation for his surrender of his tenancy. Who had promised to pay him? Anent this point, the complainant continues to be dubious and, indeed, distraught.
The complainant alleges "that all of the defendants, or some of them, fraudulently conspired and agreed to obtain the release of the lease owned by the complainant, and that they, by their actions and words, falsely, fraudulently and intentionally created an appearance of bona fides and genuineness to the transaction, and by such fraudulent and inequitable means were successful in securing a cancellation or release of your complainant's lease, all of which actions are inequitable, fraudulent, and contrary to good conscience."
The complainant prays "that the said cancellation or release [of his tenancy] may be decreed to be canceled and no longer effective as a cancellation or release against the said complainant, or any person or persons claiming by, from, or under him," and that the release be surrendered to him and decreed to be "null and void and of no effect."
I am aware of the principle which in some circumstances impels courts of equity to grant the remedy of rescission where the injured party has acted and relied upon a false representation of a material fact notwithstanding conclusive proof that the representation was innocently made. The principle is especially influential where the innocent deception has resulted in the acquisition by another of some unconscionable advantage or profit. DuBois v. Nugent, 69 N.J. Eq. 145; 60 Atl. Rep. 339.
The attitude now assumed by the complainant is that he by his perfunctory course of conduct has become a victim of the circumstances and that this court should rescue him. He recognizes that the figure of $6,750 was merely his offer communicated *Page 428 
to the broker Erb. He is unable to assert that the offer was ever accepted either by the company or by any member of the Yetter lessors.
If the testimony is to be regarded as trustworthy, it would appear that the complainant had received and rejected previous offers for his business and leasehold interest ranging from $6,800 to $8,000. Why so promptly thereafter he was disposed to accept the price of $6,750 is inexplicable.
However, I confess that I am unable entirely to exclude a conjecture that the complainant did unwittingly and ignorantly entertain a self-incubated notion that he was to receive a monetary consideration. Yet, did he believe that he was to receive the flooring of considerable value in addition to the $6,750? Possibly so.
The obstacle is that I am nonetheless unable to perceive in the acknowledged course of events anything said or done by the defendants or any of them which would justify the complainant's suppositions. The complainant knew that the company did not desire to acquire his skating rink business. He immediately learned that the terms of his lease were unsatisfactory to the company. In surrendering his tenancy, he bargained for and obtained the undisputed privilege of removing the flooring. He understood that the premises were to be let at once by his former lessors to the company upon the issuance of the license. He never apprised the company or the Yetters that he expected somehow and sometime to receive from somebody the sum of $6,750.
The company instead of buying the complainant's lease in effect spent its money in purchasing a new lease from the owners with the complainant's knowledge and co-operation. Under the new lease the company has obligated itself to pay a monthly rental of $450, which is $200 a month in excess of the rental which was payable under the terms of the complainant's lease. Certainly the company has not enriched itself at complainant's expense.
Although the Yetters relinquished their right to retain the flooring and the right to terminate the former lease upon a sale of the premises, yet it may be reasonably said that the transaction was advantageous to them. Nevertheless, there *Page 429 
is no proof that they were aware of the antecedent negotiations between the complainant and Erb, or that they indulged in any deceitful practices. Moreover it is not made evident that any of the defendants knew that the complainant was acting under a misapprehension of the nature and effect of the several steps of the mutually interdependent transactions, in one branch of which the complainant participated.
Mutual mistake can exist only where both or all parties to a transaction are laboring under the same misapprehension or erroneous belief in regard to a particular fact or circumstance. There can be no rescission awarded by reason of the mistake of one party only, where the other party was not guilty of any deception, concealment, undue influence, or bad faith, and did not cause, induce, or encourage the mistake, and will not derive any unconscionable advantage from the contractual transaction. 1Black, Rescission Cancellation 363 § 128; Levine v.Lafayette Building Corp., 103 N.J. Eq. 121, 139;142 Atl. Rep. 441; reversed on another ground, 105 N.J. Eq. 532;148 Atl. Rep. 772.
If the complainant misunderstood the nature and consequences of the bargain in its relation to his own interests, his disappointment is attributable entirely to his own supineness, inattention, and improvidence.
Equity does not rescue the heedless and neglectful to the consequential injury and loss of those who have acted innocently, diligently, and in good faith. Any attempted restoration of thestatus quo has now become impracticable. Rescission for a unilateral mistake is not an available remedy unless the parties can be restored to their original positions. Howell v. Baker,106 N.J. Eq. 434; 151 Atl. Rep. 117.
The bill will be dismissed. *Page 430