**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1653-24

IN THE MATTER OF THE
ESTATE OF DAVID
BUCCAFUSCA, deceased.

_____

Argued March 3, 2026 – Decided March 30, 2026

Before Judges Gilson, Perez Friscia, and Vinci.

On appeal from the Superior Court of New Jersey, Chancery Division, Morris County, Docket No. P-001307-18.

Gregg D. Trautmann argued the cause for appellant Daniel Buccafusca (Trautmann & Associates, LLC, attorneys; Gregg D. Trautmann, on the briefs).

Timothy P. Downs argued the cause for respondents Jose Mesia and Rocio Mesia (Timothy P. Downs LLC, attorneys; Timothy P. Downs, on the brief).

PER CURIAM

Petitioner Daniel Buccafusca, as administrator of the Estate of David

Buccafusca, appeals from a January 13, 2025 order denying his motion for

summary judgment and granting summary judgment in favor of respondents Jose

and Rocio Mesia.  We affirm substantially for the reasons set forth by Judge Frank J. DeAngelis in his well-reasoned written opinion.

I.

We summarize the facts in the light most favorable to petitioner.  See Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).[1]  Petitioner is the only child of David Buccafusca (David), and the sole heir to his estate.

In March 2016, respondents met David through Blanca Moore, a real estate agent with whom David had a prior dating relationship.  Moore testified at her deposition that David came to her office while respondents were there discussing the fact that their application for a mortgage loan to purchase a home in Wharton (the property) had been denied.  According to Moore, David "volunteered" to help respondents by co-signing the note and mortgage, but "did not invest in" the property.

On March 25, 2016, The Bank of New York Mellon executed a deed transferring the property to respondents and David for $133,500.  On May 11, 2016, respondents and David executed a note and mortgage in the amount of

---

[1]  Petitioner failed to include a statement of facts in his appellate brief in violation of Rule 2:6-2(a)(5).  We summarize the facts based on our review of the evidence considered by the judge and specifically identified in petitioner's initial brief.

2

$131,081.  There is no evidence that David made any financial contribution toward the purchase of the property or thereafter paid any portion of the monthly mortgage payments, property taxes, insurance premiums, maintenance costs, or other expenses, all of which were paid by respondents.

David suffered from esophageal cancer for approximately three years and, beginning on April 25, 2018, was under hospice care.  On May 4, 2018, at approximately 4:30 p.m., David executed a quitclaim deed (deed) transferring his interest in the property to respondents for the nominal consideration of one dollar.  The deed was signed by David in the presence of Moore and a notary public, Sonia Calvay.  Respondents were not present.

Calvay testified at her deposition that she confirmed David's identity using his driver's license and asked him if he "acknowledg[ed] the document" and was "willing to sign" it.  David responded "yes."  Calvay personally witnessed David sign the deed and then notarized the deed.  Calvay then delivered the deed to respondents.

Moore testified that David was alert, responsive, and able to answer questions on May 4.  Before he signed the deed, Moore explained to David that the deed "was for the purpose of taking his name off of" the property and he answered affirmatively and appeared to understand.  Moore observed David sign

3

the deed while sitting upright in bed.  David died on May 5, 2018, at the age of fifty-two.

Karen Cook is an Advanced Practice Nurse who began caring for David on May 3, 2018.  Cook testified at her deposition that when she first met David on May 3, he was "very lethargic but comfortable."  He "was in bed" and "was[ not] in any acute distress."  Cook did not recall how long she spent with David on May 3.

She saw David again on May 4 in the morning.  He was "very, very tired and lethargic" and "was able to indicate that he was uncomfortable."  David "said he had a headache."  Cook asked him to rate his pain on a scale of one to ten and David "indicated that he was an eight" and "was also having some problems seeing."  David "had an enlargement in his right pupil and they were equal the day before."  Cook testified that change "indicates a neurological change potentially."  David "was able to speak in some sentences" and "was more alert in the beginning of [her] visit and able to respond to a couple of questions."  Cook was not present when David signed the deed later that day.

Petitioner testified at his deposition that he visited David on the evening of May 4 after he signed the deed and David spoke in "gibberish" and asked petitioner who he was.  Lori Buccafusca, David's ex-wife, testified that she saw

4

David on May 4, and he "was kind of out of it. . . . He just kept closing his eyes and saying that his legs hurt and that he was in pain." She "[did not] think" he knew who she was.

II.

On September 26, 2018, petitioner filed a complaint against respondents and Moore.[2] Relevant to this appeal, petitioner sought a declaration that the deed was "null and void," partition of the property, and compensatory and punitive damages.

After the completion of discovery, petitioner filed a motion for summary judgment, and respondents cross-moved for summary judgment. On December 17, 2024, the judge heard oral argument. On December 23, respondents filed two documents: (1) respondents' refutation of petitioner's statement of undisputed facts in compliance with Rule 4:46-2(b); and (2) respondents' updated statement of undisputed facts in support of their cross-motion for summary judgment. Respondents "request[ed] that the [c]ourt accept [their] late submission[s]" and suggested "[s]hould [p]etitioner wish to respond, [they were] amenable to a concise scheduling order, ensuring fairness to all parties."

---

[2] Petitioner's claims against Moore were settled, and she is not participating in this appeal. Petitioner also asserted claims against TD Auto Finance that are not the subject of this appeal.

5

Petitioner did not object to the late submissions, nor did he request the opportunity to respond.

On January 13, 2025, the judge entered an order denying petitioner's motion for summary judgment and granting respondents' motion supported by a twenty-five-page written opinion. The judge rejected petitioner's claim that the Dead Man's Act, N.J.S.A. 2A:81-2, applied in this case, concluding "[s]ince [respondents] can make a prima facie case for the transfer by pointing to the [d]eed, a written document, the Dead Man's Act does not apply to the [d]eed." The judge also rejected petitioner's attempt to challenge the notarized signature on the deed because the evidence petitioner "presented to challenge the authenticity of the signature . . . fails to overcome the presumption that the notarized signature . . . is valid."

The judge found respondents "satisf[ied] the elements for a valid inter vivos gift" based on "their possession of the notarized and delivered [d]eed." The judge determined, "[t]o set aside the [d]eed, . . . [petitioner] must either prove the claim of undue influence . . . or the claim of mental incapacity." With respect to the claim of undue influence, the judge determined, "there is no evidence to support a finding that [respondents] had a confidential relationship

6

with" David and petitioner did not provide any evidence of "the exertion of undue influence by" respondents.

As to the claim of mental incapacity, the judge concluded petitioner failed to offer any competent evidence that David was incapacitated when he signed the deed and only "presented lay opinion as to [David's] capacity to contract but no expert opinion." The judge determined "lay opinion is insufficient to prove contractual incapacity" and "[s]ince [p]etitioner has only presented lay opinion, [his] claim of mental incapacity fails."

On appeal, petitioner argues: (1) the judge improperly considered respondents' late submissions and "erred in not deeming [his] statement of uncontested material facts as being admitted"; (2) the judge "erred in failing to apply the clear and convincing evidence standard contained within the" Dead Man's Act; (3) the inter vivos gift should be voided because "there was no indication the grantor understood the nature and effect of the signing of the subject deed"; (4) the judge erred by rejecting Cook's testimony "concerning the extreme infirmity and complete dependence of [David] on his caretakers and as a consequence the [judge] failed to find undue influence and/or lack of capacity"; (5) the judge "erred in accepting [David's] signature on the deed . . . without ever analyzing the" signature "and also considering the other

7

facts presented . . . to suggest [David] was incapable of signing his name"; and (6) the judge failed to consider unspecified "medical records."

### III.

Our review of a trial court's grant or denial of a motion for summary judgment is de novo. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). We apply the same standard as the trial court and consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill, 142 N.J. at 540. We owe no special deference to the court's legal analysis. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018).

Based on our de novo review, we are convinced Judge DeAngelis correctly granted respondents' motion for summary judgment and denied petitioner's motion. We add the following comments.

We are unconvinced by petitioner's claim, raised for the first time on appeal, that the judge improperly considered respondents' untimely submissions. Because petitioner did not object to respondents' submissions in the trial court, this argument is waived. "Generally, an appellate court will not consider issues, even constitutional ones, which were not raised [with the trial court]." State v.

Galicia, 210 N.J. 364, 383 (2012). "For sound jurisprudential reasons, with few exceptions, 'our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available.'" State v. Witt, 223 N.J. 409, 419 (2015) (quoting State v. Robinson, 200 N.J. 1, 20 (2009)).

Even if it were not waived, petitioner's claim lacks merit. A trial judge's evidentiary decisions made in the context of a summary judgment motion are reviewed for an abuse of discretion. Est. of Hanges v. Metro. Prop. & Cas. Ins., 202 N.J. 369, 383- 84 (2010).

Rule 4:46-2(b) provides that "[s]ubject to [Rule] 4:46-5(a), all material facts in the movant's statement which are sufficiently supported will be deemed admitted for purposes of the motion only, unless specifically disputed by citation conforming to the requirements of [Rule 4:46-2(a)] demonstrating the existence of a genuine issue as to the fact." Rule 4:46-5(a) provides that where the non-movant does not make the requisite response, the court shall grant summary judgment to the movant "if appropriate." In Sholtis v. American Cyanamid Co., we concluded discretion to accept late supplemental affidavits "should be exercised to increase, not limit, the likelihood that the information before the

court reflects the facts that could be adduced at trial." 238 N.J. Super. 8, 17 (App. Div. 1989).

Here, the court considered respondents' late submissions. Petitioner was on notice of respondents' submissions and did not object or request an opportunity to respond. We are satisfied there is no basis to find the judge misapplied his discretion by considering respondents' submissions.

IV.

We are convinced the judge correctly determined the Dead Man's Act is not applicable in this case. The statute provides:

> In a civil action that is commenced or defended by a guardian on behalf of a person who is mentally incapacitated or by a personal representative on behalf of a decedent, any other party who asserts a claim or an affirmative defense against the person who is mentally incapacitated or against the personal representative, that is supported by oral testimony of a promise, statement, or act of the person who is mentally incapacitated before the onset of mental incapacity, or of the decedent, shall be required to establish the same by clear and convincing proof.
>
> [N.J.S.A. 2A:81-2.]

In Chance v. McCann, we concluded the Dead Man's Act does not apply "when the litigant's case is based primarily on written evidence" even if "some oral testimony concerning the statements of a decedent will enhance the proofs."

10

405 N.J. Super. 547, 573 (App. Div. 2009). To determine whether the statute applies, the "judge must analyze the proofs and determine whether [the litigant] has presented a prima facie case . . . based on documentary evidence and without relying on oral testimony about [the decedent's] statements or acts." Id. at 574.

In this case, respondents' claim to the property is based primarily on documentary evidence, not the oral statements of a decedent. As the judge correctly determined, even if David's alleged statements may enhance respondents' proofs, the Dead Man's Act does not apply to the deed.

V.

We are unconvinced by petitioner's claim that the judge erred by finding respondents satisfied the elements for a valid inter vivos gift. "A gift is a transfer without consideration." Herr v. Herr, 13 N.J. 79, 88 (1953). "The burden of proving an inter vivos gift is on the party who asserts the claim." Bhagat v. Bhagat, 217 N.J. 22, 41 (2014). The requisite elements are:

> (1) an unequivocal donative intent on the part of the donor; (2) an actual or symbolical delivery of the subject matter of the gift; and (3) an absolute and irrevocable relinquishment by the donor of ownership and dominion over the subject matter of the gift, at least to the extent practicable or possible, considering the nature of the articles to be given.

[In re Dodge, 50 N.J. 192, 216 (1967) (quoting Farris
v. Farris Eng'g Corp., 7 N.J. 487, 500-01 (1951)).]

"[T]he recipient must show by 'clear, cogent[,] and persuasive' evidence that the donor intended to make a gift." Bhagat, 217 N.J. at 41 (quoting Farris, 7 N.J. at 501). Execution and delivery of a deed is generally sufficient to make such a showing. See Branco v. Rodrigues, 476 N.J. Super. 110, 117 (App. Div. 2023) ("ownership of real property is transferred by deed" and "[t]ransfer of real property interest by deed is complete upon execution and delivery of the deed by the grantor, and acceptance of the deed by the grantee" (citations omitted)); see also Walkowitz v. Walkowitz, 95 N.J. Eq. 249, 253 (E. & A. 1923) (stating "the possession of a deed by the grantee, duly executed and acknowledged by the grantors, is presumptive evidence of the delivery thereof at the date of the acknowledgement").

Respondents established that they are in possession of the deed, which was duly acknowledged and executed by David before a notary public. The judge properly determined "[w]ith their possession of the notarized and delivered deed, [respondents] satisfy the elements for a valid inter vivos gift."

To set aside the deed, therefore, petitioner must prove either the deed was the product of undue influence or David lacked the requisite mental capacity to execute it. Dodge, 50 N.J. at 227. We are satisfied the judge correctly

12

determined petitioner failed to offer evidence sufficient to establish the deed was the product of undue influence or mental incapacity.

A decedent's bequest may be overturned if it is proven to be the product of undue influence. Haynes v. First Nat'l Bank of N.J., 87 N.J. 163, 176 (1981). Petitioner bears the burden of clearly proving undue influence. See Matter of Will of Liebl, 260 N.J. Super. 519, 527 (App. Div. 1992) ("[t]he burden of proving undue influence is upon the person asserting it and must be clearly established"). Generally,

> Undue influence is a mental, moral, or physical exertion of a kind and quality that destroys the free will of the testator by preventing that person from following the dictates of his or her own mind as it relates to the disposition of assets, generally by means of a will or inter vivos transfer. . . .
>
> [In re Estate of Folcher, 224 N.J. 496, 512 (2016) (alteration in original) (quoting In re Estate of Stockdale, 196 N.J. 275, 302-03 (2008)).]

"It denotes conduct that causes the testator to accept 'the domination or influence of another' rather than follow his . . . wishes." Stockdale, 196 N.J. at 303. However, "not all influence is 'undue' influence." In re Livingston's Will, 5 N.J. 65, 73 (1950).

"In respect of an inter vivos gift, a presumption of undue influence arises when the contestant proves that the donee dominated the will of the donor, or

when a confidential relationship exists between donor and donee." Pascale v. Pascale, 113 N.J. 20, 30 (1988) (citations omitted). A confidential relationship is one where "the relations between the parties are of such a character of trust and confidence as to render it reasonably certain that the one party occupied a dominant position over the other and that consequently they did not deal on terms and conditions of equality." Est. of Ostlund v. Ostlund, 391 N.J. Super. 390, 402 (App. Div. 2007) (citation omitted).

Based on our de novo review, we are convinced the judge correctly concluded petitioner failed to offer evidence "to support a finding that [respondents] had a confidential relationship with" David or of "the exertion of undue influence" in connection with the execution of the deed.

We are unpersuaded by petitioner's claim that the judge erred by failing to find petitioner proffered evidence sufficient to find David lacked the mental capacity to execute the deed. "[T]he burden of establishing a lack of [ ] capacity is upon the one who challenges its existence . . . [and] must be [proven] by clear and convincing evidence." In re Hoover's Est., 21 N.J. Super. 323, 325 (App. Div. 1952). As a general principle, "a very low degree of mental capacity" is required to execute a deed. Will of Liebl, 260 N.J. Super. at 524. To determine whether a decedent had such capacity, the court must consider if the individual

was able to "comprehend the property he [or she was] about to dispose of; the natural objects of [his or her] bounty; the meaning of the business in which he [or she was] engaged; the relation of each of these factors to the others, and the distribution that is made." Livingston's Will, 5 N.J. at 73.

In this case, the judge concluded expert testimony was necessary to prove mental incapacity. It is well settled that when a claim involves complex issues outside the ken of the average fact-finder, expert testimony is required. Butler v. Acme Mkts., 89 N.J. 270, 283 (1982). Stated differently, "expert testimony is required when the subject matter is so esoteric that [a fact-finder] of common judgment and experience cannot form a valid judgment" on the contention without it. Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 2.3 on N.J.R.E. 702 (2025-2026).

Here, petitioner's claim that David lacked the mental capacity to execute the deed was based primarily on observations of David's physical and mental condition on May 3 and 4, 2018, by Cook, petitioner, and Lori Buccafusca.[3] The judge determined the question of mental incapacity based on the evidence

---

[3] Contrary to petitioner's claim, Cook did not offer any opinion "lay" or otherwise regarding David's mental capacity. She only described her personal observations of his condition on May 3 and the morning of May 4. She did not opine that he lacked the mental capacity to understand or execute the deed.

presented was so esoteric or complex that a fact-finder could not form a valid judgment without the benefit of expert testimony. There is no reason for us to disturb the judge's determination that expert testimony was required under the facts of this case.

## VI.

Petitioner's claim that the judge erred by "accepting [David's] signature on the deed as his own" lacks merit. A notarized signature is presumed valid. N.J.S.A. 2A:82-17. "A certificate of acknowledgment made by a duly authorized officer is regarded as prima facie evidence that the person therein named executed the instrument to which it is attached as his voluntary act and deed." Dencer v. Erb, 142 N.J. Eq. 422, 426 (Ch. 1948) (citing Walkowitz, 95 N.J. Eq. at 249). This presumption is only overcome by "clear, satisfactory and convincing" evidence. Potter v. Steer, 95 N.J. Eq. 102, 104 (Ch. 1923). The judge properly determined petitioner failed to offer evidence sufficient to overcome the presumption that David signed the notarized deed.

Finally, we are unpersuaded by petitioner's concern that David is still listed on the note and mortgage. During oral argument before us, respondents' counsel represented that they intend to refinance and remove David from the

note and mortgage. We accept that representation and are satisfied it addresses petitioner's concern.

To the extent we have not specifically addressed any of petitioner's remaining arguments, including his claims that the judge failed to "analyze" David's signature on the deed to determine if it was a forgery or consider unspecified "medical records," it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

17

A-1653-24