Hoffman *v.* Wanner.

---

## WILLIAM HOFFMAN

*v.*

## JOHN J. WANNER and others.

A mortgage for $3,000 was given, but only $500 in cash were paid to the mortgagor on account of it. The mortgagee alleged that he had accounted for the balance in liquidation of an indebtedness of a third party to him.—*Held*, that he could not collect such balance, the mortgagor not having authorized or consented to the appropriation thereof.

Bill to foreclose. On final hearing on pleadings and proofs.

*Mr. S. B. Ransom*, for complainant.

*Mr. C. L. Corbin*, for Wanner.

THE CHANCELLOR.

The controversy between the parties is, as to the amount due to the complainant on a mortgage dated September 4th, 1874, given by Wanner and his wife to him, and made to secure the payment of $3,000 in one year from the date of the instrument, with interest. It appears that Wanner received from the complainant $500 on account of the mort-

gage, when the mortgage was delivered, but never received any more. The complainant claims to have credited Julius Kirsher with the balance, $2,500, thus, as he says, applying that sum towards the payment of the price (about $17,500) which Kirsher had agreed to pay him for an ultramarine factory and fixtures and raw material therein, which the complainant had sold to him. The agreement for the sale of the factory is dated on the 31st of August, 1874, and provides for the payment by Kirsher to the complainant of $2,500, on account of the purchase-money, on or before the 15th of September then next ensuing. It is to this payment that the complainant claims to have applied the $2,500. The evidence shows that Kirsher had been superintendent of the factory for the complainant up to March or April, 1874, and then agreed to buy the factory and business from him. The complainant says Kirsher owned them from April, 1875. In or about July, 1875, Wanner agreed to go into the business with Kirsher, as his partner, and to put in $8,000 in cash, in installments, against the factory and fixtures, which Kirsher told him he owned, and which he said were worth $17,000. On the faith of these representations, Wanner entered into the business in July or August, and put in over $3,000 in cash. Kirsher, as before stated, represented to him that he owned the factory, &c. He had, however, in fact, paid nothing upon them, but had agreed to secure the payment of the whole of the purchase-money by a mortgage on the property itself, which he subsequently and on the 31st of August, 1874, gave. By the terms of the agreement between him and the complainant, he was to pay $2,500 of the purchase-money on or before the 15th of September, 1875, and $2,000 on or before the 31st of December following, and the balance as fast as he might realize it from the sale of the ultramarine to be manufactured by him, or from his net share of that commodity if manufactured by him in partnership with any other person or persons. He had, indeed, no capital whatever. The $8,000 which Wanner agreed to put in were to constitute

Hoffman *v.* Wanner.

and be used as the working capital of the concern. Wan- ner proposed to borrow $3,000 from an insurance company, but Kirsher told him that the complainant would lend it to him on first mortgage of the premises described in the mortgage which is in suit. The complainant agreed to lend it to him. Wanner swears that when he applied to the complainant for the loan, he told the latter that he wanted $500 for his own use, and $2,500 to use in the factory. He further says that the complainant gave him a check for $500, on account of the loan, and said he would give the $2,500 (the balance) to Kirsher in a few days. He further testifies that the money was to be put into the partnership business, and that he told the complainant so. He says that Kirsher had no money, and they needed the money in order to carry on the business. He says that when he applied to the complainant for the loan, the latter told him that he would lend him $3,000 on property worth double that amount or more. In his testimony as to what passed between him and the complainant when the mortgage was delivered, he is corroborated by the latter. Wanner says that when the mortgage was delivered Kirsher was with him; that the complainant said the papers were all right, and he adds that he (Wanner) then expected his money, and that he told the complainant that he wanted $500 for his own use and $2,500 to go into the factory; that the com- plainant drew his check for $500, and that he then gave the papers to the complainant; that he asked the complainant when he (Wanner) would receive the balance, and that the complainant replied that he would hand that to Kirsher, and that Wanner need not come again. He further says, that on that occasion the complainant and Kirsher had a conver- sation in a mongrel language that he could not understand.

The complainant, in his account of the transaction, says that Kirsher and Wanner came together and had the mort- gage with them; that he took the mortgage and " looked it over," and put it in his desk; that, thereupon, Wanner said, " and the money;" and that he (the complainant) then

said that it was understood between Kirsher and him that
the money was "accounted for" between them. He pro-
ceeds to say that either Wanner or Kirsher, or both, said
that Wanner wanted $500 that morning. He says that, as
he was not prepared to pay it, he objected, and that Kirsher
then took him aside and urged him very much to do him
the favor, to which he finally reluctantly consented, and
gave Wanner the $500. He says that when Wanner first
spoke about the money, he (the complainant) said, "I
account for this money with Kirsher." He afterwards says
he said he was "to account to Kirsher" for the money, and
again, that he "would account to Kirsher" for the money.
He says it was after he said this that Kirsher or Wanner, or
both of them, asked him for the $500.

Wanner testifies that he applied to the complainant for
the $2,500 about a fortnight after he delivered the mort-
gage, and the complainant told him he would give the
money to Kirsher. There is no evidence whatever that
Wanner ever authorized the complainant to apply the $2,500
to the payment of Kirsher's debt. That he entered in the
firm's book an item of $2,500, under date of September 6th,
1875, as furnished by the complainant, does not prove it.
He says that he so entered it, because he supposed the com-
plainant would pay it into the business. There is evidence
that he had reason to believe so. The complainant's account
of the transaction is not in accordance with his claim. Had
it been understood between the parties that the $2,500 were
to go to the payment of Kirsher's debt, why was it not so
stated? Why say to Wanner that the complainant would
account to Kirsher for the balance? Why this obscurity of
statement, as if there were a covert design, if Wanner under-
stood the transaction, as the complainant alleges that he
himself understood it? The fact, shown by the complain-
ant's letters to Wanner, that the complainant treated Wan-
ner's application for the money as if it were, as Wanner
states that it was, an application for a loan, is strong corrob-
oration of Wanner's statement. The $2,500 were never

paid. It is incumbent on the complainant to show that he was authorized by Wanner to credit that sum on the debt of Kirsher. It is not pretended that Wanner was in anywise bound for that debt. The whole matter has the appearance of. a concealed purpose on the .part of the complainant and Kirsher to obtain the mortgage from Wanner under pretence of making a loan to him, and then give the complainant the benefit of the whole amount of it on account of the purchase-money due the complainant from Kirsher. The very existence of that debt was not known to Wanner when the mortgage was delivered.

The complainant is entitled to a decree for only $500 and interest.