IDA A. PETERSON, appellant,

*v.*

CYRUS D. REID et al., respondents.

[Argued December 5th, 1911.    Re-argued June 21st, 1912.    Decided November 18th, 1912.]

1. A mortgage recited that it was given to secure part of the purchase-money and the conditions in the deed; by the deed the vendor-mortgagee had covenanted to fill the land conveyed; after a partial breach but before the time for full performance had arrived, the mortgage, which then had three years to run, was assigned to complainant; after the time for full performance and breach of the covenant and before the mortgage was due, the vendor and the owner of the equity of redemption who claimed through two mesne conveyances, agreed to a waiver of damages for the breach and an extension of the time for performance; the mesne conveyances both recited that the land was conveyed subject to a mortgage amounting to $10,000, meaning thereby the complainant's mortgage.—*Held*, (1) that the complainant was not bound by the cov-

enant; (2) that the mortgage was not subject to a deduction for damages caused by breach of the covenant.

2. Where land is conveyed subject to a mortgage and the circumstances show that only the definite and ascertained equity above the mortgage is meant to be conveyed, the grantee cannot claim a deduction from the mortgage by reason of an antecedent equity in favor of his grantor.

---

On appeal from a decree of the court of chancery advised by Vice-Chancellor Howell.

Bill to foreclose à purchase-money mortgage by the assignee of the mortgagee against subsequent owners claiming under the mortgagor. The defence is that the mortgagee covenanted with the mortgagor to fill in the land and failed to do so. The vice-chancellor sustained this defence. The land was conveyed by the Carteret Realty Company to Cyrus D. Reid by deed dated May 5th, 1905. The realty company covenanted that it would on or before the ensuing first day of June fill in a certain portion of the land and within six months thereafter fill the whole premises to a height of three feet above the surface. Reid executed a mortgage of even date to the Carteret Realty Company for $10,-365, upon which $10,000 remains unpaid. The mortgage was payable May 5th, 1908, and contained the usual clause making it due upon default in payment of interest. It recited that it was given to secure part of the purchase price "and the conditions named in said deed." No deed is referred to in the mortgage, but there is no doubt the deed above recited is meant. Reid conveyed to Frank T. Morrill by deed dated May 6th, 1905, recorded October 16th, 1905; and Morrill conveyed to Frank T. Morrill & Company, a corporation, by deed dated October 11th, 1905, recorded October 16th, 1905. Meantime the mortgage had been assigned by the realty company and reassigned to it, and then assigned to the complainant by assignment dated July 13th, 1905, recorded July 21st, 1905. Reid, in his deed to Morrill, covenanted to fill, in the same language as the realty company had covenanted with him; in fact the covenant seems to have been copied from the earlier deed. Morrill, in his deed, covenanted with Frank T. Morrill & Company to fill the whole premises to a height of three feet above the surface on or before

December 1st, 1905, and he assigned to the corporation any claim or cause of action he might have against Reid by reason of the non-fulfillment of Reid's contract to fill a portion of the premises on or before June 1st. Both Reid and Morrill recited in their deeds that the property was subject to a mortgage amounting to $10,000 at five per cent. interest. It is not questioned that this refers to the complainant's mortgage. The land was not filled at the time fixed. The first interest payment became due November 5th, 1905, but was not paid. At that time the only default in performance of the covenant to fill was for the portion that was to be filled by June 1st. The defendant corporation waited until December 6th, and then paid the interest, but called the complainant's attention to the breach of the covenant and gave notice that it did not waive any claim for damages which it had against the mortgagee and the complainant as assignee. It called attention to the clause in the mortgage reciting that it was given to secure the conditions in the deed, and to the covenant therein. It added:

"By virtue of the aforesaid clause in the mortgage you are held to have notice of this condition. I now expect that the filling will be put in very shortly, and that this will cause us no further trouble, but I wish you to know that should this not be done, a sufficient amount to pay for doing it ourselves will be deducted from your mortgage or interest thereof."

The defendant corporation had been in correspondence since November 11th, with Savage, an officer of the realty company, with reference to the failure to fill. Thereafter, on June 26th, 1906, a written agreement was made between Frank T. Morrill & Company and the Carteret Realty Company, which recited the covenant in the deed of May 5th, 1905, and the failure of the realty company to perform. Frank T. Morrill & Company agreed that upon condition and in consideration of the performance of this agreement, it would waive all damages which it had suffered or might suffer up to October 1st, 1906, by reason of the failure of the realty company to perform its agreement with Reid. The realty company agreed to fill the whole tract on or before October 1st, 1906, and to give Frank T. Morrill & Company the use of its dock to February 1st, 1907, without charge

and to make no charge for its previous use. The use of the dock was subject to a sale by the realty company after October 1st, 1906. On September 10th, 1907, the realty company notified the Morrill company that prospective purchasers of adjoining property would require the dock within two weeks. Interest on the mortgage was paid up to that time, although not promptly. Frank T. Morrill & Company offered the failure of the realty company to fill as its excuse for failure to pay promptly, and efforts to get that company to perform its covenant seem to have been constant but met with only partial success. Frank T. Morrill & Company defaulted in the interest due November 5th, 1907, and the bill was filed. The defendants answered and filed cross-bills, which upon demurrer were sustained. *76 N. J. Eq. (6 Buch.) 377.* Upon final hearing there was a failure to prove the charge of the cross-bills that the complainant was a mere volunteer without interest acting for the benefit of the realty company. As far as the case shows, she paid the full amount of the mortgage.

*Mr. Robert H. McCarter* and *Mr. Francis V. Dobbins* (*Mr. Arthur F. Egner,* on the brief), for the appellant.

*Mr. Thomas G. Haight* (*Messrs. Tennant & Haight*), for the respondents.

The opinion of the court was delivered by

SWAYZE, J.:

The defendants claim the right to have deducted from the amount of a purchase-money mortgage unliquidated damages for breach of an executory covenant. The covenant was made not by the present holder of the mortgage, but by her assignor, and not with the present owner of the equity of redemption, but with a predecessor in title. There is no privity of contract. The defendants seem to rest their claim either on the theory that the present holder of the mortgage is bound by a covenant made by her assignor, or the theory that she acquired the mortgage subject to an equity of the defendants to have the deduction.

(1) We think the first theory is untenable. Even if the case were one where the burden of a covenant could run with the land, the complainant's interest is, in equity, a mere security for her debt. The suggestion that the burden of a covenant made by a mortgagee with the mortgagor runs with the mortgage and binds the assignee is novel. Plain language would be necessary. In the present case, the mortgage merely recites that it is given to secure the conditions in the deed. It does not purport to bind assignees. The language is inapt to impose an obligation upon the mortgagee in favor of the mortgagor, since by its terms it "secures" the conditions by a conveyance of the mortgagor's land to the mortgagee. The complainant could not have been bound to perform the covenant, since she had no right of entry on the land for the purpose, and the owners persistently treated the realty company as the party bound. The case differs from cases of restrictive covenants where equity charges upon subsequent owners the duty to observe the restrictions. The covenant in this case involves labor and expenditure as well as the right of entry on the land. The burden of such covenants does not run with the land even in equity. *Haywood* v. *Brunswick Building Society, 8 Q. B. D. 403; 51 L. J. Q. B. 73; Austerberry* v. *Corporation of Oldham, 29 Ch. Div. 750; 55 L. J. Ch. 633,* cases which were cited with approval in *De Gray* v. *Monmouth Beach Club House Co., 50 N. J. Eq. (5 Dick.) 329* (affirmed on the vice-chancellor's opinion by this court, see *67 N. J. Eq. (1 Robb.) 619*). Even if we disregard the curious use of language which makes the mortgagor give a mortgage on his land to secure performance of a covenant for his benefit, and calls the covenant a condition, and if we assume that the intent was to secure performance of the covenant to fill contained in the realty company's deed to Reid, the defence is not helped. That covenant was a covenant of the Carteret Realty Company to fill on or before December 1st, 1905. It was subsequently abandoned by mutual agreement between the realty company and Frank T. Morrill & Company, the agreement of June 26th, 1906, substituted therefor, and all damages were waived. By means of this new agreement, Frank T. Morrill & Company secured the use of the dock, and this consideration probably led them to abandon the original

covenant. The covenant in the deed was thereby abrogated by novation, and neither the realty company nor Mrs. Peterson are liable thereon.

(2) The defence must rest on the theory that the complainant took the assignment subject to an equity in favor of the mortgagor against the original mortgagee, the complainant's assignor. We assume that she took with notice of the existing facts. One reason that courts allow a deduction from the amount of a purchase-money mortgage aside from cases where fraud justifies rescission and cancellation, is that thereby circuity of action is avoided. *Shannon* v. *Marselis, 1 N. J. Eq. (Saxt.) 413.* Before such a defence can prevail there must be a right of action in the mortgagor and damages must have been sustained. This right of action depends, as counsel for the defendants argue, upon a failure of consideration, and it is because the abatement from the face of the mortgage, in a case like the present, depends upon a failure of the consideration therefor, that the right is limited to purchase-money mortgages, where there are covenants against encumbrances, of warranty, or the like, or cases of fraud or mistake.

An examination of the facts of the present case shows that the only failure of consideration alleged is the breach of the executory covenant. That, however, is not, strictly speaking, a failure of consideration for the mortgage, since it was the promise itself and not the performance of that promise that constituted the consideration. The mortgagor might have stipulated that the mortgage should become due only upon the performance of the agreement by filling the land; he was content to rely upon the mere promise to fill. The mortgage was valid for the full amount on the day it was given because the whole consideration—the land and the promise to fill—had passed. When the contract is already executed on one side, as it was in this case by giving the mortgage, and performance of a promise by the other party is to take place in the future, it necessarily is the promise and not the performance thereof that constitute the consideration. There is no equity to a deduction from the face of the mortgage until the mortgagor has a right of action and has been in fact damaged, since it would be manifestly unjust to make a deduction where

there might eventually be no loss.   Even where there were paramount liens for taxes at the time of the deed and mortgage, but no covenant against encumbrances, we held that the deduction from the mortgage claimed on account of the tax liens could not be permitted by reason of the covenants for quiet enjoyment and general warranty.   There had been no eviction;  there was no right of action and no damage.   *Baudendistel* v. *Zabriskie's Executors, 50 N. J. Eq. (5 Dick.) 453*.   The argument is stronger in a case like the present, where at the time of the conveyance there was a complete consideration in accordance with the intent of the parties, and the damages are claimed for a subsequent breach of an executory covenant, which could not have been even anticipated at the time.    The learned vice-chancellor, however, was in error even if we could hold that the subsequent breach amounted to a failure of consideration.   The only equity against the complainant is the equity that existed when the mortgage was assigned to her on July 13th, 1905.   At that time there had been at most only a partial breach by failure to do the work required to be done by June 1st;  for the subsequent breach the defendant had a right of action against the Carteret Realty Company, but this could not affect the complainant.   She was not bound to perform the covenant of the Carteret Realty Company for reasons already stated.   The extent to which the defendants could claim an equity as against an assignee of the mortgage, if they could claim any, would be the amount of damages for the partial breach prior to the assignment.   Even that cannot be allowed to the present owner of the equity, Frank T. Morrill & Company.   The covenant to fill was not made with it, but with Reid.   If we concede that the benefit of the covenant ran with the land, it did not pass unless such was the intent of the parties effectuated by the conveyance.   Whether the benefit of the covenant has passed to Frank T. Morrill & Company depends on what Reid conveyed to Morrill and Morrill to the company.   Each deed conveyed an equity of redemption, but the extent of that equity depended on the amount to be paid on the mortgage.   If Reid conveyed to Morrill no more than the equity beyond $10,-000, and the Morrill company were now allowed to redeem for less, they would obtain more than Reid conveyed, and thus would

secure Reid's property without paying for it. It is for this reason that it is held that where land is conveyed subject to a certain mortgage the grantee cannot ask to have the mortgage abated. He does not stand in the shoes of the mortgagor; the latter owned the whole estate, the grantee only an equity of redemption. The mortgagor may convey his whole equity, or he may convey only a definite equity, and waive his defence to the mortgage in favor of the mortgagee. This was the view of Chief-Justice Green, speaking for this court in *Brolasky* v. *Miller, 9 N. J. Eq.* (*1 Stock.*) *807* (at *p. 813*). In *Warwick* v. *Dawes, 26 N. J. Eq.* (*11 C. E. Gr.*) *548, 555, 556,* Chief-Justice Beasley rested his decision upon the injustice of allowing a purchaser to profit at the expense of the mortgagee, when the mortgagor, who, if any-one, was the injured party, abandoned his right. In *Hackensack Water Co.* v. *De Kay, 36 N. J. Eq.* (*9 Stew.*) *548,* Mr. Justice Depue said that the theory on which cases of this class are founded is that the mortgagor having elected to affirm the mort-gage by selling the mortgaged premises subject thereto, the pur-chaser, by his contract as expressed in his deed, takes an equity of redemption only, and therefore cannot dispute the validity of the mortgage, and thus obtain an interest in the land which the mortgagor never intended to transfer to him. In *Trusdell* v. *Dowden, 47 N. J. Eq.* (*2 Dick.*) *896,* Vice-Chancellor Van Fleet, speaking of a case of a usurious mortgage, says that the doctrine that the purchaser of the equity of redemption, who takes title subject to such mortgage, cannot set up the defence of usury, does not rest on the theory that the taint has as between the original parties been purged from the mortgage, but upon the foundation that the purchaser by taking title subject to the mort-gage and retaining out of the price he agreed to pay sufficient money to pay the mortgage, places himself in a position where he cannot allege usury without attempting to keep back part of the money which he agreed to pay for the mortgaged lands. Having retained enough of the purchase-money to pay the mort-gage, under a promise that he would apply the money to the pay-ment of the mortgage, he would, if he could successfully make the defence, defraud both his grantor and the mortgagee. The rule has recently been reasserted and applied by this court to a case

where land was bought of a receiver of an insolvent corporation subject to the mortgage in suit, and one of the defences was that the mortgage was *ultra vires*, and therefore invalid and void. *Camden Safe Deposit, &c., Co.* v. *Citizens Ice, &c., Co., 71 N. J. Eq. (1 Buch.) 221.* These cases present two theories, one that of "unjust enrichment" (to use the nomenclature now coming into vogue), on which the action for money had and received and what are now called "*quasi*-contracts," rest; the other that the intent of the parties was to convey only a definite and ascertained equity of redemption, the right to redeem by paying the specified amount of the mortgage. The theories are not inconsistent. Where only the definite and ascertained equity is conveyed, it is an almost irresistible conclusion that allowance has been made by deducting the amount of the mortgage from the value of the land if unencumbered, and quite irresistible that if the grantee of the equity is allowed to claim a deduction from the amount of the mortgage he gets something which he never bought, and was never conveyed to him. Where the amount of the mortgage is not deducted from the purchase-money, and the grantee does not purchase subject to the mortgage, the principle is not applicable (*Van Winkle* v. *Earl, 26 N. J. Eq. (11 C. E. Gr.) 242*), and so it is where the reference to the mortgage is only by way of excepting it from the operation of the covenants for title, or the conveyance is for part only of the mortgaged premises so that the presumption arises that the land retained is to answer for the whole or part of the debt. *Magie* v. *Reynolds, 51 N. J. Eq. (6 Dick.) 113.* An examination of the facts in the present case convinces us that the intent of the parties was to convey only the definite and ascertained equity of redemption that would remain after paying $10,000 on the mortgage. The equity in the whole mortgaged premises was conveyed. The language of Reid's deed to Morrill does not evince merely an intent to except the mortgage from the covenants of title. It is "subject, however, to a mortgage amounting to the sum of ten thousand dollars," and the language in Morrill's deed to the Morrill company is the same with the omission of the words "the sum of." The object of stating the amount could have been only to fix and determine the extent of the equity intended to be conveyed. If the object had

been to except the mortgage from the operation of the covenants for title, it would have been quite unnecessary to mention the amount. Moreover, when the deed from Morrill to the Morrill company was made, there had already been a partial breach of the covenant to fill, and if the present contention of the company is sustained, the mortgage did not then amount to $10,000. This fact was known to the grantor, and the grantee is chargeable with notice; the covenant to fill was in a deed in its chain of title, and the fact that the filling had not been done was visible upon the ground. Under these circumstances the deed was made and accepted subject to a $10,000 mortgage; the necessary inference is that knowing of the breach of the covenant to fill, the grantor chose to convey and the grantee to accept what equity remained above the amount fixed. This view is confirmed by the fact that in Morrill's deed to the company, made after the partial breach on June 1st, he assigns his claim against Reid by reason of the non-fulfillment of Reid's contract. If the parties had meant to convey to Frank T. Morrill & Company, a right to claim a deduction as against Mrs. Peterson, it is inexplicable that the grantor assigned and the grantee accepted a claim against Reid, mentioned no claim as against the mortgagee and at the same time acknowledged that Mrs. Peterson's mortgage amounted to $10,000. That neither party to the last-mentioned deed supposed that more was conveyed than the definite and ascertained equity over $10,000, appears further from the fact that instead of assigning the benefit of the original covenant of the Carteret Realty Company, or any right of action against that company for the existing partial breach, Morrill entered in a personal covenant himself to fill in to the depth of three feet before the ensuing December 1st. If that covenant had been merely collateral to the original covenant of the Carteret Realty Company, he would not, in the immediately succeeding clause, have referred to the mortgage as amounting to $10,000, without reference to any equity to a reduction of amount. The parties throughout treated the covenant to fill as a personal covenant, not running with the land either by way of burden or benefit, and on each conveyance a new personal covenant was made by grantor with grantee. The case resembles *Davis* v. *Clark, 33 N. J. Eq.* (*6 Stew.*) *579*, where it:

was held that there could be no deduction from the mortgage because there was no privity of contract between the holder of the mortgage and the owner of the equity of redemption. The Carteret Realty Company was liable for breach of its original covenant, and there was a novation of its liability by the agreement of June 26th, 1906. By this agreement, Frank T. Morrill & Company waived all damages up to October 1st, 1906, in effect, extending the time for performance to that date, and the Carteret Realty Company agreed to fill in by October 1st. During the period between June 26th and October 1st, even the Carteret Realty Company was not in default. If any equity ever had attached to the mortgage in Mrs. Peterson's hands by reason of the partial default on June 1st, 1905, that must have ceased when the owner of the equity waived its claim for damages. The only breach now existing for which Frank T. Morrill & Company can claim damages is the breach of the agreement of June 26th, 1906; Mrs. Peterson cannot be charged with any liability for that breach; she was not a party to the agreement, and had acquired her mortgage a year before the agreement was made.

For these reasons we think the decree below is erroneous and must be reversed. The record should be remitted and a decree of foreclosure entered. The complainant is entitled to costs in both courts.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, BERGEN, VOORHEES, MINTURN, KALISCH, BOGERT, VREDENBURGH, CONGDON, WHITE—11.