**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1384-19

NATIONSTAR MORTGAGE,
LLC, d/b/a CHAMPION
MORTGAGE COMPANY,

     Plaintiff-Respondent,

v.

JOHN CUTRONE and
ELEONORA CUTRONE,
husband and wife,

     Defendants/Third-Party
     Plaintiffs-Appellants,

and

UNITED STATES OF AMERICA,

     Defendant,

v.

METLIFE HOME LOANS, a
division of METLIFE BANK,
N.A., and DIANA MEDEROS,
a/k/a DIANA CUTRONE, a/k/a
DIANA ENGLISH,

Third-Party Defendants/
Respondents.

_____

Submitted March 24, 2021 – Decided April 27, 2021

Before Judges Geiger and Mitterhoff.

On appeal from the Superior Court of New Jersey, Chancery Division, Morris County, Docket No. F-019867-17.

Arbore Velez, LLC, attorneys for appellant (Lawrence D. Forster, of counsel and on the briefs; Thomas Ercolano, III, on the briefs).

McCalla Raymer Leibert Pierce, LLC, attorneys for respondent Nationstar Mortgage, LLC (Francesca Arcure and William B. Jones, II, on the brief).

D'Arcambal Ousley & Cuyler Burk, LLP, attorneys for third-party defendant/respondent MetLife Home Loans (Edward V. Collins, on the brief).

PER CURIAM

In this residential foreclosure action, defendant/third-party plaintiff Eleonora Cutrone (Eleonora)[1] appeals from a September 11, 2019 order granting summary judgment and other relief to plaintiff and a November 22, 2019 final judgment of foreclosure.  We affirm.

---

[1]  Because defendants John and Eleonora Cutrone share the same surname, we will refer to them by their first names in this opinion.  We intend no disrespect in doing so.

We derive the following facts from the record. On December 28, 2011, defendant John Cutrone (John) executed a home equity conversion note (the Note) in favor of MetLife in consideration for up to $537,000 to be advanced by MetLife to John. The Note was secured by a reverse mortgage (the Mortgage) executed by John and Eleonora affecting their residential property in Denville.

On April 10, 2013, MetLife assigned the Note and Mortgage to plaintiff. In April 2016, John defaulted on the Note by failing to make the required realty tax and insurance premium payments. On June 30, 2016, plaintiff sent notice of its intent to foreclose to John and Eleonora pursuant to N.J.S.A. 2A:50-56. The default was not cured. As a result, plaintiff exercised an acceleration clause in the Note.

On August 23, 2017, plaintiff filed this foreclosure action. John and Eleonora filed a contesting answer, counterclaim, and third-party complaint against MetLife that alleged the Note and Mortgage were the product of fraud. The counterclaim alleged that MetLife knew or should have known that the Note and Mortgage were fraudulently executed by third parties. The third-party complaint alleged MetLife "participated in a fraudulent Mortgage and Note executed by third parties other than the [d]efendants." It further alleged Mederos, the Cutrone's ex-daughter in law, "participated in impersonations that

resulted in a fraudulent Mortgage being obtained. . . ." Following John's death in January 2018, plaintiff dismissed him from this matter in April 2018.

During her deposition, Eleonora testified she knew what her late husband's signature looked like from seeing him write it on checks, bills, and the like. When shown the mortgage documents, Eleonora confirmed that John had signed the two Notes. When shown other signatures and initials, Eleonora once again confirmed they were John's except for one, which she claimed did not look like her husband's. However, Eleonora recognized the signature and initials on the mortgage as being her husband's handwriting. In addition, Eleonora admitted that she signed and initialed the Mortgage. She remembered signing the mortgage. When asked whether she knew if John ever obtained a mortgage loan on their home, Eleonora responded that she did not know because "[h]e never told me, never told me nothing."

Despite these admissions, Eleonora continued to assert that Mederos executed the mortgage, not John or Eleonora. Eleonora further testified that she did not remember when the mortgage was signed.

Corey Higby, a former notary public and employee of Chancellor Title Agency, certified that on December 28, 2011, he attended the closing of the mortgage at the Cutrone's home. Higby stated that he "met the Cutrones on that

A-1384-19

date[] and notarized their signatures on the Mortgage." He further certified that "Eleonora Cutrone acknowledged the Mortgage was being taken by John Cutrone as she had previously relinquished her rights in the property to him prior to the execution of the . . . Mortgage."

Joseph Bucci, the President of Chancellor Title Agency certified that his agency performed the title work on the mortgage transaction. Bucci certified the signatures of John and Eleonora were notarized on the mortgage by Higby, who was a Chancellor Title employee at the time.

Plaintiff's assistant secretary, Erin Naylor, certified that on December 28, 2011, John executed the Note to MetLife in return for up to $537,000. Naylor certified that to secure the Note, John executed a Home Equity Conversion Loan Agreement, and that Eleonora and John executed a Home Equity Conversion Mortgage on their Denville home.

Plaintiff and MetLife moved for summary judgment, citing defendant's testimony and certifications from Naylor, Higby, and Bucci. Eleonora opposed the motions and moved for leave to file an amended third-party complaint against Mederos. On January 28, 2019, the court denied summary judgment and granted Eleonora leave to file an amended third-party complaint to assert a claim

A-1384-19

against Mederos and to obtain discovery from her despite "the weight of the evidence . . . against [d]efendant." Mederos did not file an answer.

In March 2019, plaintiff moved for summary judgment a second time. The motion was denied because Eleonora still sought to depose Mederos.

Mederos was deposed in May 2019. She testified that she was married to the Cutrones' son, Anthony, from 1991 to 2012. Mederos also testified that she had conversations with John about the reverse mortgage in 2011 because Mederos and Anthony planned on opening up a restaurant and bar and could use some seed money. Mederos said she discussed the arrangement with Anthony and John over the phone and that she and Anthony "would be responsible for [the mortgage payments]." Mederos stated that she did not think John told defendant about the arrangement. During the process of getting the mortgage, John would sign documents and send them to Mederos and Anthony to check the documents to make sure John did not miss a page. Mederos and Anthony would then send the documents back to John.

After learning of the foreclosure, Mederos indicated to Anthony and her ex-brother-in-law, Joe Cutrone, "that if they could convert it into a regular mortgage that [she] would contribute to paying it off, paying it down." She would not answer why she said that.

A-1384-19

At the time she was deposed, Mederos lived in Charlotte, North Carolina. She previously lived with Anthony in Indian Land, South Carolina. Those addresses matched the addresses where several reverse mortgage checks were sent. Mederos would not answer whether she received those disbursement checks—many of which were issued well after her separation from Anthony in early 2012. Nor would she answer whether she had signed John's name on a February 17, 2013 check. Mederos admitted, however, that all of the checks made payable to "John Cutrone" were sent to her address.

Mederos admitted that she endorsed a November 2013 check for $6000. She would not testify where that money went. Mederos stated that John "most likely did not" know anything about those checks. Mederos acknowledged that endorsement signatures on a November 2013 check and a July 12, 2012 check appeared to be her signature.

Mederos would not answer who signed or endorsed several other checks issued in 2012 and 2013. She testified that none of those funds went into any business that she and Anthony had set up. She would not answer whether she received any of the funds or where the funds went, except that Anthony did not receive any of the funds. Nor would she answer whether she had any contact with plaintiff regarding disbursements on the reverse mortgage. Mederos

7

A-1384-19

thought that only John could request an advance on the reverse mortgage. She also believed that none of the mortgage funds went to John or Eleonora.

The South Carolina address matched several addresses indicated as the "borrower's address" on the mortgage documents. However, Mederos testified she was not in New Jersey at the time of the closing and that she had no part in creating the signatures or initials on the Note or Mortgage. Rather, she was in either North Carolina or South Carolina on December 28, 2011.

In June 2019, plaintiff and MetLife again moved for summary judgment. During oral argument on the motions, plaintiff asserted that it definitively made out the prima facie elements of a foreclosure action under Thorpe v. Floremoore Corp., 20 N.J. Super. 34 (App. Div. 1952)—evidence of a note and a mortgage, recordation of the mortgage, and non-payment by the borrower. Plaintiff further argued that Eleonora failed to show Mederos perpetrated a fraud and that Higby's certification, which created a presumption of validity of the Mortgage, cannot be overcome. Finally, plaintiff argued that the Cutrones failure to receive any loan proceeds does not prevent foreclosure because it is the promise by the lender to make loan advances that matters, not whether the borrower actually received the payments.

A-1384-19

MetLife argued that defendant has failed to present evidence that would raise a genuine issue of material fact that would preclude summary judgment. MetLife also argued that defendant's failure to receive the Mortgage proceeds was irrelevant to this proceeding.

Eleonora argued that her ability to pursue a claim against Mederos precluded summary judgment because plaintiff and MetLife were negligent in the execution of the Mortgage and the transfer of the loan proceeds. She also argued that there was no consideration given for the mortgage because John never received the loan funds.

On September 11, 2019, Judge Maritza Berdote-Byrne issued an order and accompanying thirteen-page statement of reasons, which: (1) granted summary judgment to plaintiff; (2) struck Eleonora's answer, counterclaim, and third-party complaint; (3) entered default against Eleonora; (4) permitted plaintiff to proceed in an uncontested manner pursuant to Rule 4:64; (5) dismissed Eleonora's counterclaim and third-party complaint without prejudice; (6) granted Eleonora leave to file a Law Division complaint against plaintiff, MetLife, and Mederos; and (7) denied Eleonora's motion for leave to file an amended answer.

A-1384-19

The judge noted that in his certification, Higby, who was the notary public who acknowledged the signatures on the Mortgage, "recall[ed] meeting [Eleonora] and her husband at the property on December 28, 2011." He also recalled "a conversation he had with John Cutrone regarding an upholstery business."

The judge further noted that plaintiff produced copies of John's driver's license and social security card that were obtained by MetLife when processing John's mortgage application. In addition, MetLife "produced a 'Notice to Non-Borrowing Spouse' . . . signed by Eleonora Cutrone."

The judge found that there was no dispute that a default occurred under the terms of the Note and Mortgage. Defendant was sent appropriate notice of intent to foreclose. Plaintiff, through a recorded assignment, was the holder of the Mortgage and had standing and the right to foreclose.

As to the validity of the Mortgage, the judge found John and Eleonora's signatures "appear on the [M]ortgage." "Their signatures were acknowledged by Higby," a notary public, and were "presumed to be valid." The judge explained that "[t]his presumption of validity may only be overcome by proof that is 'clear, satisfactory[,] and convincing.'" (quoting Potter v. Steer, 95 N.J. Eq. 102, 104 (Ch. 1923)).

After recounting the facts and arguments asserted by the parties, including those in certifications and deposition testimony, the judge concluded:

> Given the record before the court, [Eleonora] cannot overcome this presumption of validity, even affording [her] the benefit of every favorable inference as required at the summary judgment stage. In [Eleonora's] deposition testimony[,] she definitively recognize[d] the signatures and handwriting on the [M]ortgage as her own and that of her husband. MetLife has produced John Cutrone's driver's license and social security card—there is no indication from [Eleonora] how these documents would come into MetLife's possession if people impersonated both her and her husband. Additionally, Higby recalls meeting [Eleonora] and her husband on the date the [M]ortgage was closed.
>
> A party does not create a genuine issue of fact simply by offering a sworn statement. Carroll v. N.J. Transit, 366 N.J. Super. 380, 388 (App. Div. 2004). "[C]onclusory and self-serving assertions in certifications without explanatory or supporting facts will not defeat a meritorious motion for summary judgment.["] Hoffman v. Asseenontv.com, Inc., 404 N.J. Super. 415, 425-26 (App. Div. 2009). Defendant's mere statement alleging she and her husband did not sign the note and mortgage, without any additional supporting facts cannot form the basis of raising a genuine issue of material fact, particularly because she identified her signature on the mortgage.
>
> [(eighth alteration in original).]

Affording Eleonora every reasonable inference, the judge further found that although Mederos and Anthony "instigated" the application for the Note and

A-1384-19

Mortgage "with the idea of opening a bar and restaurant" and "Mederos played a prominent role in executing the mortgage application," John executed the Note and Mortgage with Mederos and Anthony being responsible for repayment of the loan. The judge concluded that whether Eleonora or John "understood the effect of executing the [N]ote and [M]ortgage is not consequential to this foreclosure action given the court's holding they did sign the [N]ote and [M]ortgage." The judge explained "[t]here is a legal presumption a signatory to a contract 'read, understood and assented to its terms and he will not be heard to complain that he did not comprehend the effect of his act in signing.'" (quoting Peter W. Kero, Inc. v. Terminal Const. Corp., 6 N.J. 361, 368 (1951)).

The judge rejected Eleonora's claim that further discovery was necessary, finding it meritless. She noted the complaint was filed more than two years earlier and the time for discovery was closed. Four case management orders were entered, which provided sufficient time to conduct discovery, including deposing Mederos.

The judge rejected Eleonora's claim that the mortgage was not supported by consideration, finding that plaintiff and MetLife had disbursed the funds loaned under the Note and Mortgage. Moreover, she found both Eleonora and John "had the ability to draw down funds from the [N]ote and [M]ortgage after

these documents were executed. The mere ability to draw down funds is a sufficient benefit to support a finding of consideration." She also noted that although "Mederos drew down a majority of the funds available," those actions "are most appropriately addressed through [an] action against Mederos."

The judge also rejected Eleonora's claimed status as an innocent non-borrowing spouse. The judge found the failure to pay the real estate taxes on the mortgaged premises rendered Eleonora ineligible for a deferral period as a non-borrowing spouse under 24 C.F.R. § 206.55 (2017). Accordingly, plaintiff was not precluded from obtaining summary judgment.

Thereafter, plaintiff moved for entry of final judgment of foreclosure. Eleonora did not oppose the motion. On November 22, 2019, final judgment of foreclosure in the amount of $316,926.81 plus interest and costs was entered in favor of plaintiff. This appeal followed.

Eleonora raises the following points for our consideration:

> I. THE TRIAL COURT ERRED IN FINDING [ELEONORA] DID NOT RAISE A LEGITIMATE ISSUE OF MATERIAL FACT THAT REQUIRES TRIAL IN THIS MATTER.
>
> II. THE TRIAL COURT ERRED IN BIFURCATING THE MATTER AND LEAVING [ELEONORA] TO PURSUE MONETARY REMEDIES IN THE LAW DIVISION.

13

III. THE TRIAL COURT ERRED IN BARRING [ELEONORA] ASSERTION OF THE DEFENSE OF FAILURE OF CONSIDERATION.

I.

We affirm the order granting summary judgment substantially for the reasons expressed in Judge Berdote-Byrne's comprehensive and cogent written statement of reasons. Her findings are supported by the record, and her legal conclusions are consonant with applicable law. We add the following comments.

Our review of a ruling on summary judgment is de novo, Green v. Monmouth Univ., 237 N.J. 516, 529 (2019), applying the same legal same standard as the trial court, RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018). Summary judgment shall be granted by a trial court if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Green, 237 N.J. at 529 (quoting R. 4:46-2(c)). We "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to

resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523 (1995). We accord no deference to the trial judge's conclusions on issues of law. Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

A.

Eleonora challenges the validity of the Mortgage, alleging it was fraudulently executed. She claims that the trial court erred because a genuine issue of material fact exists as to the validity of the Mortgage due to Mederos's conduct. We are unpersuaded.

"The only material issues in a foreclosure proceeding are the validity of the mortgage, the amount of the indebtedness, and the right of the mortgagee to resort to the mortgaged premises." Great Falls Bank v. Pardo, 263 N.J. Super. 388, 394 (Ch. Div. 1993), aff'd o.b., 273 N.J. Super. 542 (App. Div. 1994). A plaintiff presents a prima facie case for foreclosure by showing the execution of the mortgage, recordation of the mortgage, and non-payment of the mortgage. Thorpe, 20 N.J. Super. at 37.

A notarized signature is presumed valid. N.J.S.A. 2A:82-17. "A certificate of acknowledgment made by a duly authorized officer is regarded as prima facie evidence that the person therein named executed the instrument to

15

which it is attached as his voluntary act and deed." <u>Dencer v. Erb</u>, 142 N.J. Eq. 422, 426 (Ch. 1948) (citing <u>Walkowitz v. Walkowitz</u>, 95 N.J. Eq. 249 (E. & A. 1923)). This presumption is only overcome by "clear, satisfactory and convincing" evidence. <u>Potter</u>, 95 N.J. Eq. at 104. "[C]onclusory and self-serving assertions by one of the parties are insufficient to overcome the motion." <u>Puder v. Buechel</u>, 183 N.J. 428, 440-41 (2005) (citation omitted).

Here, Higby, the notary public present at the mortgage closing, certified that he travelled to John and Eleonora's home on the closing date, met both John and Eleonora, and notarized their signatures on the loan documents. Higby even recalled a conversation with John about his upholstery business. Further, Bucci, the President of the title company that Higby worked for, certified that Higby attended the closing.

Eleonora simply denies executing the Mortgage. During her deposition, however, Eleonora admitted that John signed the Note and she and John signed and initialed the Mortgage. She acknowledged that she did not know if John ever obtained a mortgage loan on their home because he never told her anything.

Eleonora's opposing certification implicates the sham affidavit doctrine.

> That term refers to the trial court practice of disregarding an offsetting affidavit that is submitted in opposition to a motion for summary judgment when the affidavit contradicts the affiant's prior deposition

testimony. The doctrine calls for rejection of the affidavit where the contradiction is unexplained and unqualified by the affiant. In such circumstances, the alleged factual issue in dispute can be perceived as a sham, and as such it is not an impediment to a grant of summary judgment.

[Shelcusky v. Garjulio, 172 N.J. 185, 194 (2002) (citation omitted).]

The Supreme Court concluded that "[s]ham facts should not subject a [party] to the burden of a trial." Id. at 201.

As to the execution of the Note and Mortgage, Eleonora's opposing certification was plainly inconsistent with her prior deposition testimony and she offered no plausible explanation for the "inconsistency in [her] representations to the court." Id. at 202. On the contrary, her attempted explanation is strained and unpersuasive. It is also riddled with hearsay.

Eleonora has otherwise not met her burden to show that the mortgage is invalid—she offers no proof to show that neither she nor John were present at the closing, or any proof to undermine Higby's and Bucci's certifications. In addition, Eleonora has not presented any competent proof that Mederos forged John and Eleonora's signatures. As such, there is a presumption that a signatory "read, understood and assented" to the documents' terms. Peter W. Kero, 6 N.J.

17

at 368. Defendant's bare allegations are insufficient to overcome a presumptively valid mortgage.

B.

We next address the dismissal without prejudice of Eleonora's counterclaim and third-party complaint. Eleonora argues the entire controversy doctrine applies in this case, which demands an equitable remedy in the chancery division. Plaintiff and MetLife argue that the counterclaim and third-party complaint are not germane to the foreclosure action and were properly dismissed without prejudice.

"Only germane counterclaims and cross-claims may be pleaded in foreclosure actions without leave of court." R. 4:64-5. Therefore, "claims for foreclosure shall not be joined with non-germane claims against the mortgagor or other persons liable on the debt." Ibid. Non-germane claims include, but are not limited to, "claims on the instrument of obligation evidencing the mortgage debt, assumption agreements[,] and guarantees." Ibid.

The entire controversy doctrine is inapplicable to non-germane claims in a foreclosure action. R. 4:30A; Luppino v. Mizrahi, 326 N.J. Super. 182, 184-85 (App. Div. 1999). See also Pressler & Verniero, Current N.J. Court Rules, cmt. 5.6 on R. 4:30A (2021) ("Non-germane claims in mortgage foreclosure

A-1384-19

actions are excluded from the preclusionary consequences of the entire controversy doctrine.").

"A foreclosure judgment is res judicata as to the amount of the unpaid obligation secured by the mortgage" because "[a] foreclosure action is purely quasi in rem, affording relief only against the secured property." Resol. Tr. Corp. v. Berman Indus. Inc., 271 N.J. Super. 56, 62 (Law. Div. 1993). In a future action, the defendant may "set up a variety of defenses based upon facts or circumstances connected with the inception of the mortgage." Central Penn Nat'l Bank v. Stoneridge Ltd., 185 N.J. Super. 289, 302 (Ch. Div. 1982).

In her counterclaim and third-party complaint, Eleonora demanded judgment for compensatory damages, punitive damages, and counsel fees and costs. These non-germane claims for monetary damages are not properly heard in the Chancery Division. Moreover, the parties have a right to a jury trial on those claims. The counterclaim and third-party complaint were properly dismissed without prejudice, with leave granted to file a Law Division complaint asserting those claims.

C.

Eleonora further argues that the trial court erred by rejecting her defense of failure of consideration. Relying on McDowell's Ex'rs v. Fisher, 25 N.J. Eq.

93 (Ch. 1874) and <u>Hoffman v. Wanner</u>, 29 N.J. Eq. 135 (Ch. 1878), Eleonora contends she presented a viable defense because she did not receive the proceeds of the loan transaction. We are unpersuaded.

We initially note that Eleonora did not assert failure of consideration as an affirmative defense in her answer or amended answer. <u>See</u> <u>R.</u> 4:5-4 (requiring affirmative defenses, including failure of consideration, to be "set forth specifically and separately" in a responsive pleading). "[O]rdinarily, an affirmative defense that is not pleaded or otherwise timely raised is deemed to have been waived." Pressler & Verniero, cmt. 1.2.1 on <u>R.</u> 4:5-4 (citations omitted). <u>See also</u> <u>Kopin v. Orange Products</u>, Inc., 297 N.J. Super. 353, 375 (App. Div. 1997) (same) (quoting <u>Brown v. Brown</u>, 208 N.J. Super. 372, 384 (App. Div. 1986)). Eleonora did not raise this affirmative defense until she filed her opposition to the third motion for summary judgment, almost two years after the complaint was filed. Consequently, Eleonora waived this defense. <u>See</u> <u>Brown</u>, 208 N.J. Super. at 383 (concluding that an affirmative defense was waived when the case was defended vigorously for more than two years before it was raised).

For the sake of completeness, we will address the merits of the defense. Eleonora's reliance on <u>McDowell</u> and <u>Hoffman</u> is misplaced. <u>McDowell</u>

involved a lender that did not make any advances under the mortgage. 25 N.J. Eq. at 94. Since no loan proceeds were disbursed, there was no balance owed and no legal basis for foreclosure. Ibid. In Hoffman, the mortgagor borrowed $3000, and the lender disbursed $2500 to the mortgagor's creditor without the mortgagor's knowledge or consent. 29 N.J. Eq. at 135, 138-39. Neither case held that the mortgages at issue were unenforceable due to a lack of consideration. Indeed, neither case even discussed whether the mortgagor received sufficient consideration.

"[E]ither a slight benefit to the promisor or a trifling inconvenience to the promisee" is sufficient consideration. Great Falls Bank, 263 N.J. Super. at 401 (citing Ross v. Realty Abstract Co., 50 N.J. Super. 147, 153 (App. Div. 1958)). Here, borrowing funds to assist their son and daughter-in-law in opening a restaurant was consideration for the mortgage. "[V]aluable consideration is not essential to the validity of a mortgage. . . ." 30A N.J. Practice, Law of Mortgages § 32.3, at 218 (Myron C. Weinstein) (2d ed. 2000). If there is consideration, "there is no additional requirement of gain or benefit to the promisor, loss or detriment to the promisee, equivalence in the values exchanged, or mutuality of obligation." Martindale v. Sandvik, Inc., 173 N.J. 76, 87 (2002) (quoting Shebar

v. Sanyo Bus. Sys. Corp., 111 N.J. 276, 289 (1988)).  See also Restatement (Second) Contracts § 79 (Am. Law Inst. 1979).

The judge properly found that the mortgage is supported by adequate consideration.  Where the borrower enters into a loan transaction by giving "the mortgage, and performance of a promise by the [lender] is to take place in the future, it necessarily is the promise[,] and not the performance thereof, that constitute[s] the consideration."  Peterson v. Reid, 80 N.J. Eq. 450, 455 (E. & A. 1912).  Here, the borrower executed the loan agreement, Note, and Mortgage in consideration of MetLife's promise to make future loan advances.  "[I]t was [that] promise itself[,] and not the performance of that promise, that constituted the consideration."  Ibid.  John received consideration in the form of the lender's promise to pay future loan advances, whether those advances were ultimately paid to him or another person, to assist Anthony in opening a restaurant.  No further consideration was required.  See Martindale, 173 N.J. at 87.

Moreover, the record reflects that significant mortgage proceeds were disbursed.  As of September 12, 2019, the unpaid principal balance on the mortgage account was $209,134.15.  In addition to loan advances, the lender remitted significant funds to pay real estate taxes and other expenses.  Although John and Eleonora may not have personally received the mortgage proceeds,

22

they agreed that the loan proceeds would be remitted to Anthony and Mederos to fund their new restaurant. Whether Mederos is liable to pay back the mortgage proceeds is an issue that Eleonora may take up in a separate Law Division action.

## II.

Eleonora also appeals from the November 22, 2019 final judgment of foreclosure. Aside from challenging the grant of summary judgment in favor of plaintiff and the striking of her defenses, she has otherwise argued that the entry of final judgment was error.

We note that Eleonora did not oppose plaintiff's motion to enter final judgment. See R. 4:64-1(d)(3). Nor has she argued to this court that plaintiff's motion failed to comply with Rule 4:64-1(d)(4). Final judgment was properly entered based on the unopposed proofs submitted by plaintiff.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1384-19